TAX REFORM RESEARCH GROUP
et al., Plaintiffs,

v.

INTERNAL REVENUE SERVICE,
Defendant.

Civ. A. No. 74–216.

United States District Court,
District of Columbia.

July 19, 1976.

William A. Dobrovir and Joseph D. Gebhardt, Washington, D. C., for plaintiffs.

Donald J. Gavin, U. S. Dept. of Justice, Tax Div., Washington, D. C., for defendant.

## MEMORANDUM

BRYANT, District Judge.

This matter is now before the Court on cross motions for summary judgment. For the reasons discussed below, both motions are granted in part and denied in part. Plaintiffs in this case include a public interest group concerned with reform of the tax laws in the United States. In August of 1973, shortly after the testimony of John W. Dean, III before the Senate Select Committee On Presidential Campaign Activities (the Ervin Watergate Committee), plaintiffs made a freedom of information request of the Internal Revenue Service for certain documents whose existence or probable existence had been revealed by that testimony. Mr. Dean's testimony indicated that the Nixon Administration had been pressuring the Internal Revenue Service to take various actions with respect to persons perceived by the White House as either "friends" or "enemies" of the Administration. The records sought in plaintiffs' FOIA request were generally those which would disclose specific contacts between the White House and the I.R.S. in connection with this endeavor. Following the refusal of the I.R.S. to honor a narrowed request, plaintiffs commenced this action on February 1, 1974. Since that time the issues in the case have been considerably narrowed by negotiation between the parties, and the remaining documents as to which disagreements still exist have been submitted to the Court for *in camera* inspection. Having inspected the more than 330 documents at issue, the Court now directs that a large number of them be released, and sustains the I.R.S.'s claims of exemption with respect to a relatively few of them.

As Mr. Chief Justice Burger observed in another FOIA case, "[i]f 'hard cases make a bad law,' unusual cases surely have the potential to make even worse law." *Department of the Air Force v.*

*Rose,* 425 U.S. 352, 96 S.Ct. 1592, 1609, 48 L.Ed.2d 11 (1976). This is such a case; the Court is faced here with many conflicting and overlapping values to serve, in the context of a unique factual setting. The conflicts are serious: on the one hand, the basic purpose of the Act is to open to public scrutiny the actions of the various government agencies without unnecessarily invading individuals' personal privacy; on the other hand, by opening to public scrutiny certain details of abuses which themselves were invasions of personal privacy, the personal privacy of individuals involved in the original abuses may be further invaded. Moreover, the agency involved, the I.R.S., has traditionally guaranteed the privacy of its transactions with taxpayers. While in normal circumstances that privacy is protected by statute, difficulties arise where, as here, the activities involved are not part of the normal and proper operations of the agency, in relation to which taxpayer privacy is normally protected, but are rather connected with serious abuses of an essentially political nature, which—not being contemplated by the privacy statute—may therefore not be protected from disclosure. Also to be weighed in the balance is the obvious public interest in a full and thorough airing of the serious abuses that did in fact occur, in the hope that such abuses will not occur in the future and that confidence in the neutrality of the I.R.S. and in the privacy of taxpayer relations with the I.R.S. may be restored. In weighing these various interests in light of the mandate of the Act that the balance be tipped towards disclosure, the Court has attempted to be sensitive to these values and to reconcile them to the extent possible; the Court does wish to note however that the resolution of the issues herein must be viewed in light of the unusual context in which the case arises.

The records plaintiffs claim have been wrongfully withheld fall into three categories: correspondence between the I.R.S. and a Special Assistant to the President, Clark Mollenhoff, during the time Mr. Mollenhoff was at the White House (referred to as the "Mollenhoff documents"); records that are responsive to paragraph 16b of the amended complaint (referred to as the "16b documents"); and four documents written by White House personnel, responsive to paragraph 16e of the complaint (referred to as "16e documents").

## I. THE MOLLENHOFF DOCUMENTS

By agreement of the parties, the Mollenhoff documents consist of those documents compiled by the I.R.S. in connection with its investigation of charges of undue influence by the White House on the Service. The correspondence between Mr. Mollenhoff and the I.R.S. falls into three subcategories:

(A) Requests by Mr. Mollenhoff, as Special Counsel to President Nixon, to inspect income tax returns of named taxpayers.

■ The twenty-three pages in this category are "form" requests and summaries of the form requests and were furnished to the plaintiff with the taxpayers' names deleted. The I.R.S. has claimed that these deletions are proper under 5 U.S.C. § 552(b)(3), which exempts documents which are "specifically exempted from disclosure by statute." Defendant relies on 26 U.S.C. § 6103, 26 U.S.C. § 7213 and 18 U.S.C. § 1905 to support that claim. Section 1905 of Title 18 does not exempt the I.R.S. from disclosure of records, rather, it prescribes the penalties for disclosure of confidential information; it is therefore irrelevant to the defendant's claim. *In Tax Analysts & Advocates v. I.R.S.,* 164 U.S. App.D.C. 243, 505 F.2d 350 (1974), the Court held that sections 6103 and 7213 provide "for protection of the privacy of taxpayers filing tax returns and are designed to prevent disclosure of information contained either in the returns or in documents filed in conjunction therewith which enable the secretary or his delegate to determine tax due the United States." Accord, *Fruehauf Corp. v. I.R.S.,* 522 F.2d 284 (C.A.6, 1975), cert. granted 423 U.S. 1047, 96 S.Ct. 772, 46 L.Ed.2d 635 (1976). The Court in *Tax Analysts* further held that certain documents known as "technical advice memoranda" were protected by the statutes since the

memoranda dealt directly with information contained in "returns made with respect to taxes" and are part of "the process by which tax determinations are made" and, thus, "specifically exempt from disclosure by statute." Id. at 355. The documents now before the Court are simply form requests from Mr. Mollenhoff to the I.R.S. requesting tax information on the named individuals. They do not contain any information supplied to the I.R.S. by the taxpayer that is entitled to the protection of sections 6103 and 7213.

■ The defendant argues that the Court of Appeals' construction of sections 6103 and 7213 has been altered by the Supreme Court's decision in *F.A.A. Administrator v. Robertson*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975). Plaintiff in that FOIA suit sought certain reports concerning the operation and maintenance performance of commercial airlines. The administrator of the F.A.A. withheld the documents under exemption 3 of the Act, claiming that 49 U.S.C. § 1504[1] gave him the discretion to disclose or to withhold the documents sought by the plaintiff. The Supreme Court was faced with the question of whether the FOIA impliedly repealed all such discretionary disclosure statutes. The Court found no congressional intent to do so and held that a statute which confers discretion on an administrator to disclose is no less a "statute" within the meaning of § 552(b)(3), and thus can serve as a basis for an agency's refusal to disclose records sought under the FOIA. Because the statutes relied on by the defendant here contain no grant of discretion comparable to section 1504 the defendant's reliance on *Robertson, supra,* is misplaced. Since no other exemptions are applicable, these documents must be released in their entirety.

 (B) Requests by Mr. Mollenhoff, as Special Counsel to President Nixon, for information regarding Service treatment of specific taxpayers.

These documents are requests by the White House, as well as the I.R.S. responses to those requests, for status reports on then-pending I.R.S. investigations of several taxpayers. From the Court's inspection it is clear that the documents are summaries of investigations the I.R.S. had undertaken by virtue of its authority to enforce the tax laws. The documents detail what the taxpayers were being investigated for and what the results of those investigation show, and the contemplated future action of the I.R.S. The documents in question were released to the plaintiff with the names of the taxpayers and certain other identifying data deleted. The I.R.S. has asserted exemption (b)(3) for the three documents (6 pages) in this category. For the same reasons that apply to Category I(A), the Court holds that exemption (b)(3) does not apply. However section (b)(7)(C) of the Act allows an agency to withhold identifiable records when those records constitute "investigatory files compiled for law enforcement purposes, but only to the extent that the production of such records would . . . constitute an unwarranted invasion of personal privacy." Summary reports of investigations are certainly "investigatory files" within the meaning of exemption (b)(7). Upon reading the documents it becomes clear that the data on which the reports were based was compiled by the I.R.S. for the purpose of enforcing the tax laws. In *Retail Credit Co. v. Federal Trade Commission*, CA 75–0895 (D.C. D.C., February 2, 1976), Judge Jones said: "Exemption (b)(7)(C) is closely patterned on Exemption (b)(6), which precludes disclosure of information which would constitute a clearly unwarranted invasion of personal privacy." The Court of Appeals, in *Getman v. N.L.R.B.*, 146 U.S.App.D.C. 209, 450 F.2d 670 (1971), outlined the considerations relevant to determining whether disclosure would constitute a clearly unwarranted invasion of privacy. One of those considerations is the use to which the requesters wish

---

**1.** In relevant part that statute provides: ". . the Board or Administrator shall order such information withheld from public disclosure when, *in their judgment,* a disclosure of such

information would adversely affect the interests of such person and is not required in the interests of the public" (emphasis added)

to put the materials. Plaintiff here is an organization generally seeking a more equitable and efficient tax system. In pursuit of this goal it needs all the information it can obtain concerning the present condition of the internal revenue system. The documents here at issue disclose the existence of and request the details of settlement arrangements and tax liabilities of the taxpayers involved. The Court perceives no way in which the plaintiffs could use this information, and believes it would reveal nothing further about the attempts by the Administration to use the I.R.S. for political purposes than is already well known. See, e. g. Joint Committee On Internal Revenue, "Investigation Into Certain Charges Of The Use Of The Internal Revenue Service For Political Purposes", December 20, 1973, 93d Cong., 1st Sess. (Committee Print). Because the disclosure of the withheld names would constitute a serious invasion of the personal privacy of the taxpayers involved, the Court believes that the disclosure would therefore be unwarranted. *Getman v. N.L. R.B., supra.* Their privacy has already been invaded by the requests themselves, and the Court finds no public interest in exacerbating that invasion. For these reasons the Court holds that the edited portions of the documents in this category (as specified in the attached order) are properly withheld from disclosure under § 552(b)(7)(C).

 (C) Memoranda from Mr. Mollenhoff, as Special Counsel to President Nixon, to the I.R.S. indicating individuals suspected to be violating the tax laws.

There are two documents (consisting of four pages) in this category. Both documents were released to the plaintiffs with the names of the taxpayers deleted. The first document states that Mr. Mollenhoff had been informed that an attached list of thirteen individuals had been reporting

their income improperly and requests a study of their returns.[2] The second document alleges financial irregularities in connection with bankruptcy and courts and asks that the tax returns of the nine people listed be given close examination "with particular reference to payoff money for political bribes." The I.R.S. claims that the taxpayers' names are protected from disclosure by exemption (b)(3) or (b)(6). For the reasons discussed earlier the Court rejects the I.R.S. argument that these documents are protected from disclosure by (b)(3). Exemption 6 allows an agency to withhold "personnel and medical and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." The defendant contends that the White House transmittals to the I.R.S. of the lists containing names and addresses and accompanied by unsupported allegations of criminal activity are "similar files" within the meaning of this exemption.[3]

 The nine specified exemptions to the FOIA provide the only basis for an agency's refusal to disclose information sought. *Soucie v. David,* 145 U.S.App.D.C. 144, 448 F.2d 1067 (1971), *Getman v. NLRB,* 146 U.S.App.D.C. 209, 450 F.2d 670 (1971), *Tax Analysts And Advocates v. Internal Revenue Service,* 164 U.S.App.D.C. 243, 505 F.2d 350 (1974), and are to be construed narrowly, *Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), *Cuneo v. Schlesinger,* 157 U.S.App.D.C. 368, 484 F.2d 1086 (1973). In the process of executing their respective congressional mandates many agencies must compile and evaluate data of a highly personal nature on various individuals. It is critical to this process to preserve and protect a citizen's expectation of privacy lest the candor necessary between the government and the citizenry be lost. Exemption 6 provides

---

**2.** The Court notes that the I.R.S. response to this memorandum stated that it was contrary to I.R.S. policy to begin an investigation on mere allegations of criminal activity and requested the White House to support the allegations prior to any I.R.S. investigation. The subsequent action of these two agencies on this

matter is not revealed by the documents submitted to the Court.

**3.** The I.R.S. does not claim that Exemption 7 applies to these lists, and the Court has no reason to believe that it does.

such protection, but instructs the court when balancing these interests to "tilt the balance in favor of disclosure." *Getman v. NLRB, supra,* at 674. As Judge Wright said in that case, "the real thrust of Exemption (6) is to guard against unnecessary disclosure of files of such agencies as the Veterans Administration or the Welfare Department or the Selective Service or the Bureau of Prisons which would contain 'intimate details' of a 'highly personal' nature. The giving of names and addresses is a very much lower degree of disclosure; in themselves a bare name and address give no information about an individual which is embarrassing." 450 F.2d at 675.

■■ The I.R.S. occupies a unique role among administrative agencies, in that all citizens are required by law to report to it the intimate details of their financial lives. Congress was well aware of the sensitive and private nature of the information involved, and therefore explicitly provided that this information should remain confidential; these provisions are found in sections 6103 and 7213 of Title 26. Were these statutes not in existence, the information they protect would surely be protected by Exemption (b)(6), since it has all the attributes of personal privacy files present in other cases to which the exemption has been found to apply. However, aside from files on its own employees, the only other files on individual taxpayers which the I.R.S. would compile in its normal activities and for which any privacy exemption might be available would be those utilized in law enforcement investigations of taxpayers suspected of violating the tax laws, which might be exempt under (b)(7)(C). Other than such investigatory files, therefore, the only files generated by normal I.R.S. activity to which a privacy exemption might ap-

ply are those which are already protected by sections 6103 and 7213. Because this material is the same material which would otherwise be covered by exemption (b)(6), and because no other "similar" files would normally exist,[4] the reach of the (b)(6) exemption is defined by the limits of those two statutory provisions. Since those sections, for reasons discussed earlier, do not cover this material here at issue, the Court holds that these documents are not exempt under (b)(6).[5] However because the material is so potentially embarrassing (White House allegations of criminal activity), the Court orders plaintiffs not to release the names involved to anyone without obtaining prior written permission of the persons named.

## II. THE 16b DOCUMENTS:

These documents constitute the bulk of the material withheld from the plaintiff and can be described as follows:

(A) Documents responsive to paragraph 16b of the complaint withheld in their entirety.

(1) Documents which are non-responsive to the FOIA request.

■ By the terms of amended paragraph 16b, plaintiffs specifically excluded from their request all records which were "routine White House referrals of taxpayers' complaints, suggestions, or questions; written communications not located at the National Office of the I.R.S. in Washington, D. C.; any income tax return, accompanying document or explanatory material filed by a taxpayer; and FBI requests for tax checks on individuals considered for appointment to government positions."[6] A number of the documents submitted to the Court fall

---

4. A possible exception to this rule might be found in the case of identifying information in certain "letter rulings", which would appear to constitute "similar" files, but which are not protected by exemption (b)(3). See *Tax Analysts, supra,* and *Fruehauf, supra.*

5. This anomalous result, that highly embarrassing and sensitive material is not protected by the privacy provisions of the Act or the Code, results from the fact that it was not compiled

as a result of normal I.R.S. activity, but rather of highly questionable activity stimulated by the White House. Had normal investigatory activity been involved, the material would presumably be protected by Exemption (b)(7)(C).

6. Stipulation Authorizing the Amendment of paragraph 16(b) of the plaintiffs' complaint, pp. 2–3, filed December 13, 1974.

into this category. Thus, where the White House received a routine inquiry, request or comment from a taxpayer and forwarded it to the I.R.S. for a reply with a notation that the I.R.S. should take "whatever action it deemed appropriate", the document fell outside of the scope of the complaint and is properly withheld from the plaintiff as nonresponsive to the FOIA request.

(2) Communications from the White House to the I.R.S. regarding the status of tax affairs of named taxpayers and the I.R.S. response to these communications.

■ Typically these documents consist of a White House referral of a request for assistance by an individual or corporate taxpayer with a suggestion on how the matter should be handled. The request for assistance usually contains a detailed description of the individual's financial plight and his/her present problem with the I.R.S. The I.R.S. withheld these documents in their entirety on the basis of (b)(3). The court, for the reasons stated earlier, disagrees with the defendant's expansive definition of (b)(3). However, portions of these documents do come within the scope of (b)(3). Thus, where the documents contain tax return information for which (b)(3) is properly invoked, that material has been edited by the Court and the portions disclosable ordered released, 5 U.S.C. § 552(b).

(3) Notes of telephone conversations and memoranda discussing policies and practices of the I.R.S.

The documents that fall into this category consist of very cryptic transcribed short hand notes of telephone conversations as well as memoranda discussing policies and practices of the I.R.S. The subject matter of these documents ranges from the I.R.S. position on tax exempt status for racially discriminatory schools to the handling of questions by the media. The defendant contends that Exemption (b)(5), which permits an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation

with another agency," provides the basis for withholding these documents.

■ As the Supreme Court stated in *N.L.R.B. v. Sears Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975), "the ultimate purpose of this long recognized privilege is to prevent injury to the quality of agency decisions." It is, as that court stated, "the deliberations comprising part of a process by which governmental decisions and policies are formulated" which are to be protected. *Id.* at 150–151, 95 S.Ct. at 1516. Thus, expressions of opinion, advice or suggestion are generally exempt under Exemption 5. *Environmental Protection Agency v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); *Sterling Drug Co. v. F.T.C.*, 146 U.S.App.D.C. 237, 450 F.2d 698 (1971). However, factual material which is segregable from an otherwise deliberative memorandum must be disclosed. *Environmental Protection Agency v. Mink, supra.* But where factual and deliberative material are inextricably intertwined the entire document may be withheld. *Soucie v. David*, 145 U.S.App.D.C. 144, 448 F.2d 1067 (1971). In certain cases exempt material may become non-exempt if the reasoning of the previously exempt material is incorporated by reference in otherwise disclosable materials. *N.L.R.B. v. Sears Roebuck & Co., supra, Renegotiation Board v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975). Likewise, any "deliberative" or "advisory" material intended to explain a decision of policy already adopted is not within the purview of Exemption 5, *N.L.R.B. v. Sears Roebuck & Co., supra; Sterling Drug Co. v. F.T.C., supra.* In sum, it is deliberative, non-factual, predecisional memoranda, the disclosure of which would injure the quality of agency decisions, that are protected by Exemption 5. The wide variety and the sheer volume of these documents prohibit a lengthy explanation of the application of these principles to the documents in question. The court has, as indicated in the attached order, applied the above principles to each document and where appropriate ordered released, withheld, or edited information contained therein.

(B) Documents responsive to paragraph 16b of the complaint released to the plaintiff with deletions:

These documents cover a wide range of subjects. Many of them are discussions between Service and White House personnel regarding specific issues of tax policy, such as underwithholding or tax exempt status of racially discriminatory private schools. Many of these documents are simply routing forms that were attached to materials withheld in their entirety. Still others deal substantively with an individual taxpayer's difficulties with the I.R.S. Also included in these documents are taxpayers' opinions or inquiries on tax policy matters that were forwarded to the I.R.S. by the White House. The documents fall into the following subcategories:

(1) Documents which are non-responsive to the FOIA request.

 For the reasons stated in the discussion of the plaintiffs' amended complaint, documents which were specifically excluded from the amended complaint are properly withheld from the plaintiffs. The Court has indicated on the attached order the reason each document is non-responsive.

(2) Documents which defendant claims are protected by Exemption 7(A).

Exemption 7(A) protects "investigatory files compiled for law enforcement purposes, but only to the extent that production of such records would interfere with enforcement proceedings." Defendant has supplied to this Court an affidavit of a Mr. Jay Horowitz, Assistant Special Prosecutor, Office of the Watergate Special Prosecution Force. Mr. Horowitz states that certain documents (numbers E–3 through E–8 listed on Defendant's Appendix A) would adversely affect the criminal investigation to which these documents are relevant. Plaintiffs do not contest this claim; rather they request the court to order the documents released once that investigation has been terminated. The court is satisfied that these documents are investigatory files within the meaning of Exemption 7 and for

the reasons stated in the previous discussion of Exemption (7)(C), holds that disclosure of these documents after the termination of the present investigation would constitute an unwarranted invasion of personal privacy.

(3) Documents released to the plaintiff with the names of the I.R.S. employees deleted.

These documents are primarily discussions of I.R.S. policy. The I.R.S. has released the documents in their entirety except for the signatures of the I.R.S. employees who prepared, reviewed or commented on these documents. Voicing a concern that the I.R.S. employees involved in these matters will be harassed by the media if their names are released, the I.R.S. claims protection under (b)(5) and (b)(6). For the reasons stated in the discussion of Exemption 6 the court rejects the I.R.S. claim that these documents are protected by that exemption. As to the Service's claim of exemption under (b)(5), however, the Court finds that the deletions made in the documents are within the intended scope of the exemption.

As the Court has noted earlier, the (b)(5) exemption is intended to protect the decision-making process used by the agency in arriving at its policy decisions. An integral element in any such deliberative process, if it is to function effectively, is the free, uninhibited, and candid exchange of views and ideas among the participants in the process. The facilitation of this open exchange is one of the primary purposes of the protection afforded by this exemption. It is widely recognized that disclosure of the advice and comments made by particular individuals on a policy issue may have a chilling effect on the openness with which those individuals subsequently express such comments and advice. One aspect of the deliberative process therefore protected by exemption (b)(5) is the identity of persons giving particular advice on a policy matter. In the instant case, in which the issue seems to be one of first impression, the agency has disclosed the actual substance of the policy

discussions, withholding only the identity of the participants in those discussions. (A participant in this context is anyone who authored, reviewed, approved, or commented on a given deliberative document. To be more restrictive in definition would undermine the protection afforded by the exemption by allowing indirect, deductive identification of the author or endorser of the views expressed). In light of the Act's general policy of maximum possible disclosure, and the resulting approval of segregation and release of non-exempt material as a device for furthering that policy, the Court believes that. it is permissible for an agency to determine that only part of a deliberative memorandum need be withheld to protect the deliberative process, and to disclose the remainder of the document. Because the identity of the parties to the deliberations reflected by the memorandum is protected by the exemption, the Court cannot say that segregation and non-disclosure of that identity segment of the contested documents is improper. Accordingly, the Court has reviewed the relevant documents and has approved the withholding of the identity portion of any of those documents which are otherwise deliberative. Identity segments of non-deliberative documents (otherwise non-exempt) must of course be released.[7]

(4) Documents containing correspondence between the White House and the I.R.S. on tax policy matters; letters from taxpayers or requests for assistance which were other than routine.

 The defendant has deleted the names of taxpayers and identifying data from these documents, asserting Exemption 3 or Exemption 6. The majority of these documents do not contain information contained in returns and used in the determination of taxes, thus Exemptions 3 and 6 are inapplicable. Where (b)(3) deletions were proper, i. e. where taxpayers' names were linked to information contained in re-

turns, the court has so indicated in the attached order.

## III. THE 16e DOCUMENTS

In paragraph 16e of its complaint, plaintiff requests disclosure of the four documents submitted to United States District Judge Charles R. Richey for *in camera* inspection in *Center On Corporate Responsibility v. Shultz,* 368 F.Supp. 863 (D.D.C., 1973). Defendant has withheld the documents entirely, claiming (1) that they are not "identifiable agency records of the I.R. S.," (2) that they are "inter-agency or intra-agency records," and (3) that they are protected by the attorney-client privilege. The Court finds these contentions without merit, and directs that the documents be released.

The claim upon which the I.R.S. chiefly relies to shield these documents is the first, that they are not identifiable agency records of the Service within the meaning of § 552(a)(3). To support its claim, the I.R.S. points out that the documents were not generated by the agency itself in the normal course of its business, but rather came into its possession when the Office of Chief Counsel at the Service was provided the documents by the Justice Department (which apparently had received them from the White House for *in camera* submission to Judge Richey) for the purpose of determining whether the Service wished to appeal the *Center On Corporate Responsibility* decision. The I.R.S. also states that the documents were not in any of its own files prior to that time; rather, they were kept in a locked safe in the Chief Counsel's Office while the Service was using them, and were returned to the Justice Department after the decision was made not to appeal Judge Richey's decision. The defendant also argues that the four memoranda "do not directly involve any ordinary Service administrative function; and it is the White House, not the Service, which is equipped to state the circumstances of their generation,

---

7. As the attached order reflects, only two memoranda in this category were found by the Court to be deliberative.

the applicability to them of any privileges, and all other considerations relevant to their defense from discovery." Memorandum In Support Of Defendant's Motion For Summary Judgment, p. 19 (filed November 13, 1975). No assertion is made that the documents are protected by the doctrine of executive privilege, nor that they are not responsive to the FOIA request as clarified and amended during the course of negotiations and litigation.

 No case has been found which addresses the issue involved here, nor does the legislative history of the Act provide any real guidance. The Court believes however, that the structure and purposes of the Act operate to foreclose defendant's claim that these memoranda do not constitute agency records subject to the Act's disclosure requirements. In general, the Act seeks to make public all records of government actions and functions, unless specifically exempted by the Act itself. And it cannot be denied that making decisions with respect to litigation in which it is involved is a normal function of the I.R.S., or any agency, despite the fact that it is not the central function of the agency. Moreover, the Court does not believe that the nature of the function is a relevant criterion: the Act directs disclosure of all agency records unless specifically exempted, whatever the reason for their use by the agency. As the Service concedes, it did use these documents in making litigation decisions, cf. *Wu v. National Endowment For Humanities*, 460 F.2d 1030, 1032 (C.A.5, 1972) (report of outside consultants is agency record for purpose of Exemption 5). Nor is it decisive that the documents were generated by the White House rather than the I.R.S. Agencies often utilize or receive copies of documents generated in other agencies, and such documents, if identifiable, are clearly agency records for the purposes of the Act. Indeed the Act itself makes provision for this situation. Section

552(a)(6)(B)(iii) allows for a short extension of the Act's time provisions (in responding to a request) in a case where the agency must consult with another agency having a substantial interest in the determination of the request. This provision would certainly be applicable to the instant situation, and is the method prescribed by the Act for the assertion of any claims of exemption by the agency which, *inter alia*, generated the document. To hold that a document received by an agency and actually used by it in agency decision-making is not an agency record for purposes of the Act simply because the document was not generated by that agency or because the decision was on a peripheral matter would seriously undermine one of the central purposes of the Act: to allow the public to become informed on the bases for agency decisions and actions. Such a holding would contradict the mandates of Congress that documents be disclosed unless specifically exempt and that the balance should be tipped in favor of disclosure in questionable situations.[8] Finally in this regard, the fact that the Service returned the documents to the Justice Department after using them does not exempt them from disclosure. The criterion provided by the Act is that the records be "identifiable" (or in the 1974 amendments, "reasonably identified"); that these records are identifiable is clear from the fact that they were produced to the Court in response to plaintiff's request. That the agency may no longer be in physical possession of the records (which is not what the Service contends here) is not determinative, cf. *Soucie v. David*, 145 U.S.App.D.C. 144, 448 F.2d 1067, 1075–1076 (1971); if the agency knows what records a given request is directed towards, knows where those records are located, and is able to produce them, the Act requires that it do so.[9] A contrary holding would mean, for example, that the Federal Energy Administration, in making determinations requiring conversion to coal as a fuel source pursuant to the

---

8. The Court would also note that the specific documents involved here do in fact relate to the central functions of the I.R.S., albeit in the context of an abuse of those functions.

9. Whether the agency is able to produce the records is a matter for case-by-case determination, in light of the particular circumstances involved.

Energy Supply and Environmental Coordination Act of 1974, P.L. 93–319, 88 Stat. 246, could utilize data supplied by the Environmental Protection Agency, then return the data to EPA, and be exempt from producing the data under the FOIA. This is obviously not what Congress intended, and the Court will not create such a gaping loophole in the Act.

██ The Service also argues that Exemption 5 should apply to this material. As the Court has discussed earlier, and as the cases make clear, this exemption is intended to cover material reflecting the deliberative process involved in governmental policy-making. The four documents at issue here simply cannot be construed as being part of any proper governmental process. As Judge Richey noted in the *Center On Corporate Responsibility* case, the documents "demonstrate that the White House staff did in fact consider using the I.R.S. against their 'enemies,'" 368 F.Supp. at 872, n. 19. The memoranda relate "to the recommendations and attempts to use the Internal Revenue Service in a selective and discriminatory fashion against those tax-exempt organizations which express opposition to the policies and programs of the Administration." *Id.* at 881. They are no more part of the legitimate governmental process intended to be protected by Exemption 5 than would be memoranda discussing the possibility of using a government agency to deliberately harass an opposition political party. In short, these memoranda possess none of the attributes required for an exemption under § 552(b)(5), and must accordingly be released.[10]

---

10. The Service does not seriously press its contention that these documents are protected by the attorney-client privilege, nor could it. The documents are clearly not an attorney's work product in connection with any litigation, and the mere fact that the I.R.S. came into possession of the documents initially in connection with its defense of a suit does not in any way implicate the privilege.