**Alan McSURELY et al., Plaintiffs,**

v.

**Herbert H. McADAMS, II et al., Defendants.**

**Civ. A. No. 516–69.**

United States District Court,
District of Columbia.

July 17, 1980.

## MEMORANDUM AND ORDER

BRYANT, Chief Judge.

This matter involves the obligation of the Internal Revenue Service ("IRS") to comply with a subpoena issued by the plaintiffs pursuant to Fed.R.Civ.P. 45. A brief history of the case is helpful in understanding the nature of plaintiffs' discovery request.

### A

Plaintiffs have sued a United States Senator and various Congressional officials ("federal defendants"), and a former State's prosecutor ("Ratliff") for punitive and compensatory damages. The defendants are alleged to have violated plaintiffs' constitutional, statutory, and common law rights; such violations "are claimed to arise from individual actions and a conspiracy of defendants to harass, stigmatize, and intimidate plaintiffs through the appropriation and use [of approximately 234 documents] taken from [the plaintiffs'] home in an unlawful search by Kentucky agents on August 11, 1967." *McSurely v. McClellan*, 553

F.2d 1277, 1280 (D.C.Cir. 1976) (Leventhal, J.) (majority *en banc* opinion).

Early in the litigation, the federal defendants moved for summary judgment, claiming they were immune from suit under the Speech and Debate Clause. This court denied their motion, and the federal defendants appealed. Judge Leventhal, writing for a majority of the court *en banc*, outlined the allegations surviving the federal defendants' claim of legislative immunity and before this court on remand. *Id.* at 1299. These included claims that (a) federal defendant Brick inspected, selected, and transported to Washington, prior to the issuance of a Congressional subpoena, 234 documents seized from the plaintiffs, (b) federal defendants distributed copies of such documents to individuals or agencies outside of Congress,[1] and (c) other federal defendants acted in concert with Brick in activity unprotected by the Speech and Debate Clause. *Id.* at 1298–99. In addition, the potential liability of defendant Ratliff for promoting and participating in the seizure of plaintiffs' documents, inspecting the seized material, and disseminating the documents to the federal defendants or any other party, is still an issue before this court. *Id.* at 1281 n.3, 1288 n.38.

It was only after the *en banc* decision of the Court of Appeals on December 21, 1976, that the parties were able to engage in serious discovery.[2] In May 1979, the plaintiffs issued a subpoena to the Commissioner of the IRS, pursuant to Fed.R.Civ.P. 45, calling for the production of four general categories of material:

---

1. Plaintiffs' amended and supplemental complaint alleges that defendant Brick exhibited copies of the 234 documents to unknown persons, causing plaintiffs damage and embarrassment. Amended and Suppl. Compl. ¶¶ 19, 28(b)(ii). The particular claim that documents were disseminated to the IRS was first raised when this case was before the Court of Appeals. At that time, plaintiffs had obtained documents under the Freedom of Information Act indicating contact between the Permanent Subcommittee on Investigation of the United States Senate Committee on Government Operations (the "Subcommittee") and the IRS concerning access to each other's files. 553 F.2d 1277, 1285 & n.25.

2. Early in this suit, this court stayed all proceedings, pending the outcome of a criminal contempt case against the plaintiffs. The Court of Appeals vacated the stay on December 26, 1970, and remanded for further proceedings. No discovery occurred from August 30, 1971, when the plaintiffs were given leave to file an amended and supplemental complaint, until June 12, 1973, when this court denied the motion of the federal defendants for summary judgment. Only two Congressional officials were deposed from August 6, 1973, when the federal defendants appealed the denial of their summary judgment motion, until after the *en banc* opinion of the Court of Appeals issued on December 21, 1976.

(1) *Material directly relating to the McSurelys* (¶¶ 1, 3, 5)[3]-this included documents (or information based on documents) taken from the McSurelys, Special Service Staff ("SSS") files labelled under either of the plaintiffs' names, and tax return material for either plaintiff from 1966 to the present;

(2) *Material in the SSS files relating to nine listed organizations* (¶ 4)--this included all documents on the Student Nonviolent Coordinating Committee ("SNCC"), Students for a Democratic Society ("SDS"), Southern Conference Educational Fund ("SCEF"), and six other organizations;

(3) *Material in the SSS files received from Congressional committees,* (¶ 2) and

(4) *Material relating to the general activity of the SSS* (¶¶ 6, 7, 10)--this included status reports on the IRS "Ideological Organizations" project prepared from 1963-68, a list of all individuals and organizations on whom the SSS maintained files, and a list of certain individuals and organizations who were notified that they had been subject to SSS investigation.

The Commissioner did not object to the material requested in the first category. He did object to production of material in the remaining three categories. The plaintiffs moved to compel the production of the requested documents. In response, the Commissioner asserted that the confidentiality provisions of the Tax Reform Act of 1976, 26 U.S.C. § 6103 (Supp. II 1978) ("§ 6103") prohibited the plaintiffs from examining information accumulated during tax investigations of other private citizens or organizations.[4] On November 5, 1979, this court issued an order slightly modifying the terms of plaintiffs' subpoena and directing the IRS to produce any material falling within the revised request. Even as revised, the subpoena still required the production of material in SSS files on the nine designated organizations, contacts with certain Congressional committees, and lists and status reports reflecting the scope of SSS activity. The November 5, 1979 order also contained a provision permitting the IRS "to formally assert a recognizable privilege" as to any material subject to production. The IRS has now moved for a clarification of this provision; in particular, the agency has asked whether the privilege against discovery it claims is incorporated in § 6103 can be asserted against any particular document falling within the statutory privilege.

### B

From the onset, it is important to recognize the exact nature of the information the plaintiffs seek. Their request is not directed at the raw tax returns filed by other parties. Instead, they are interested in discovering the extent to which their documents (or information in those documents) were disseminated throughout the IRS, and the manner in which their documents (or again, information in those documents) were used by IRS officials. The extent and use of disseminated material plays an extremely important role in plaintiffs' damage action. As mentioned earlier, an independent cause of action against the federal defendants and Ratliff may exist for disseminating material to the IRS. In such a case, the damages incurred by plaintiffs could very well include the "embarrassment and humiliation" they suffered as a result

---

**3.** Paragraph references are to Schedule A attached to the subpoena directed to the Commissioner.

**4.** In an attempt to accommodate the plaintiffs, however, the IRS examined the organizational and Congressional files referred to in the second and third categories. "To identify a document as one of the McSurely documents, the IRS looked for references to the McSurelys, cover letters indicating the source of the particular document, or some other identifying feature of the document since the sources of most

of the materials placed in the SSS are identified." Opposition of the IRS to Plaintiffs' Motion to Compel the Production of Documents and Attorneys Fees at 4. "[N]one of the McSurely documents [was] found, nor were any documents located indicating any dissemination." *Id.* The plaintiffs assert that only they are familiar enough with the seized documents to determine if SSS files indicate any dissemination. Reply to Opposition of the IRS to Plaintiffs' Motion to Compel at 21-25.

of the disclosure of their material to IRS officials, as well as the use of such material by the IRS to subject plaintiffs' friends, and organizations to which plaintiffs belonged, to "implicit and explicit threats of harassment." *Id.* at 4; Plaintiffs' Answers to Interrogatories of Federal Defendants at 2, 4, 9. In addition, dissemination of material may be an additional factor in determining overall damages flowing from other distinct violations by Ratliff or the federal defendants, such as the initial seizure of the documents.

There appears to be no question that the plaintiffs' subpoena for information accumulated or prepared by the SSS (other than actual tax returns) would have been enforceable under the statutory predecessor of § 6103. *See United States v. Liebert,* 519 F.2d 542 (3rd Cir.), *cert. denied,* 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 301 (1975) (old sections 6103(a) and 7213(a)(1) of Internal Revenue Code do not prohibit production of tax information (other than actual returns) pursuant to "lawfully issued judicial order"); *cf. Tax Analysts and Advocates v. IRS,* 505 F.2d 350 (D.C.Cir. 1974) (same statutory provisions do not prohibit production of tax material (other than actual returns) pursuant to FOIA request); Memorandum in Support of Motion of Jerome Kurtz for Clarification and for a Protective Order at 7 (citing cases). The IRS contends, however, that § 6103, which took effect on January 1, 1977,[5] creates a statutory privilege barring a private party in a non–tax proceeding from discovering tax information (other than actual returns) accumulated during an investigation of the tax liability of third parties.[6]

This claim has not yet been addressed in this, or apparently any other, circuit. It is based primarily on the new definition of "return information" contained in § 6103(b)(2)(A), which

"[A] taxpayer's identity . . . whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability . . . of any person under this title for any tax . . . ."[7]

The statute provides generally that "return information shall be confidential" and not disclosed by any officer or employee of the United States except as provided within the statute. 26 U.S.C. § 6103(a)(Supp. 11 1978).[8]

There are a number of instances within § 6103 when return information may be disclosed to federal, state, and Congressional officials for, *inter alia,* tax administration, criminal law enforcement, or statistical purposes. For purposes of this case, return information may be disclosed to private parties in three contexts.[9] An individual taxpayer is entitled to inspect his own return and any return information associat-

---

**5.** Section 6103 became effective ten days after the decision of the Court of Appeals remanding the case to this court for further proceedings. *See* note 2, *supra.*

**6.** It seems that return information collected as part of an investigation of the *plaintiffs'* tax liability would be available to the plaintiffs under the new version of § 6103. *See* § 6103(e)(6). This would be true for material containing information on third parties. Section 6103(e), and the non–identity provision of § 6103(b)(2), *infra* note 7, appear to be the basis for the offer of the IRS to examine its own files for documents seized from the plaintiffs. *See* note 4, *supra.*

**7.** "Return information" does not "include data in a form which cannot be associated with or otherwise identify, directly or indirectly, a particular taxpayer." § 6103(b)(2).

**8.** "Disclosure" is defined as "making known to any person in any manner whatever a return or return information." § 6103(b)(8).

**9.** *See also* § 6103(h)(4) (private parties subject to judicial and administrative tax proceedings can gain access to return information under Jencks Act or Fed.R.Crim.P. 16, so long as court issuing order gives "due consideration to congressional policy favoring the confidentiality of . . . return information . . . ."). It appears that, in at least one circumstance, Congress did not view properly constructed discovery orders as antithetical to the purpose and scheme of the Tax Reform Act.

ed with that return, § 6103(e)(1), (6). A written designee of a taxpayer may examine return information of that taxpayer. § 6103(c). Finally, certain persons other than the taxpayer, deemed to have a "material interest" in tax returns, e. g., members of a partnership, corporate designees or shareholders, or trustees, can also examine return information associated with tax returns. § 6103(e)(1)(C)–(F), (e)(6). In any of these instances, the Secretary of the Treasury may prevent the examination of return information if it is determined that "such disclosure would seriously impair Federal tax administration." § 6103(c), (e)(6).

Aside from these particular instances, the statute makes no explicit provision for the disclosure of third–party return information to a private party in a non–tax civil case, pursuant to a court order that such disclosure properly falls within Fed.R.Civ.P. 26, 45. The IRS views this as a firm expression of Congressional intent to render third–party return information exempt from discovery in the present case. This court disagrees.

 It is a maxim of statutory construction that statutes "should be interpreted so as to effectuate their manifested purpose or object." See generally, Sutherland, Statutes and Statutory Construction § 58.06 (4th ed., C.D. Sands, 1972). The legislative history underlying the Tax Reform Act of 1976 indicates that the overriding purpose of the confidentiality provisions of § 6103 was to protect tax returns and return information from misuse by the White House, various Executive Branch agencies and other government entities. S.Rep. No. 94–938, 94th Cong., 2d Sess. 316–18 (1976), reprinted in, [1976] U.S. Code Cong. & Ad. News, pp. 2897, 3439 ("Senate Report"); 122 Cong. Rec. 24012–13 (1976) (Remarks of Senators Dole and Weicker) ("Remarks"). Of particular concern was the misuse of tax information for partisan political purposes. Senate Report at 316–17; Remarks at 24012–13. Discovery in this case is directed at the

activity of the SSS, an entity whose very existence stemmed, in large part, from partisan interests and which engaged in the sort of dispersal of tax information the Tax Reform Act of 1976 was designed to prevent. See Staff of the Subcommittee on Constitutional Rights, Senate Judiciary Committee, 93rd Cong., 2d Sess., Political Intelligence In The Internal Revenue Service: The Special Service Staff 1–38 (Comm. Print 1974) ("Political Intelligence"). The plaintiffs' interest in discovery complements, rather than contradicts, the prime rationale behind § 6103.

 At the same time, the confidentiality provisions of the Tax Reform Act affecting access to return information by private parties evince two other legislative purposes. The first is that the public, as well as various government entities, should not have wholesale, unregulated access to tax information. Although § 6103 only mentions access by private parties through two routes · receiving the consent of the taxpayer or falling within one of the designated "material interest" categories–this court is not convinced that Congress intended these to be the sole avenues of disclosure. The legislative history surrounding § 6103 indicates that Congress simply never addressed the issue of access to tax information by private parties in non–tax civil cases, pursuant to court discovery orders. As mentioned earlier, the main concern of Congress was the status of the IRS as a virtual "lending library of confidential tax information" to various government agencies, Remarks at 24013 (Senator Weicker), not the production of information pursuant to carefully tailored discovery orders based upon an adequate showing of need by a litigant. This court is unwilling to relegate to obscurity the practice of permitting court ordered discovery of tax information (other than actual returns) under the predecessor statute of § 6103. This is especially true in light of what appears to be Congressional inattention to court ordered disclosure in this type of case, rather than clear Congres-

sional disapproval. Judicial supervision of the discovery process will ensure that access is far from wholesale; moreover, the institution of properly tailored protective orders will minimize any resulting invasion of privacy.

The confidentiality provisions of § 6103 evince one additional legislative purpose: federal tax administration should not be "seriously impair[ed]" by the disclosure of return information. The SSS was abolished in 1973, Political Intelligence at 9, and there appears to be little likelihood that disclosure of any of its records will "seriously impair" current tax administration. This court, however, will permit the IRS to make such a claim with regard to any document falling within the discovery order.[10]

### C

This court has examined its November 5, 1979 order with the legislative purposes of § 6103 in mind, and is particularly concerned with the showing plaintiffs have made regarding access to the files of the nine organizations listed in Schedule A, ¶ (4) of their subpoena. The plaintiffs' predicament is understandable. Apparently when all of the 234 documents seized by the defendants were returned, they were destroyed by the plaintiffs. Moreover, the documents relate to activities occurring over twelve years ago. At the same time, this court is reluctant to permit the plaintiffs to examine entire files of return information on various organizations without some showing that their own documents pertained to the activities of such organizations, and were likely to be incorporated in SSS files on such organizations. After plaintiffs' documents were seized, they were examined by an investigator for the Subcommittee. *McSurely v. McClellan*, 553 F.2d 1277, 1282 (D.C.Cir. 1976) (majority opinion *en banc*). Shortly thereafter, the Subcommittee issued a subpoena for certain

of the documents deemed relevant to the Subcommittee investigation. *Id.* The subpoena referred to three of the organizations listed in ¶ (4) of Schedule A (SNCC, SDS, SCEF). Defendants' Appendix, Vol. 2, p. 902, *United States v. McSurely*, 473 F.2d 1178 (D.C.Cir. 1972). This provides enough of a link between plaintiffs' documents and these three organizations to permit discovery of SSS files on SNCC, SDS and SCEF. The plaintiffs are free to submit additional information indicating how any of the seized documents pertain to the other six organizations listed in Schedule A.

Finally, the protective order suggested by the IRS is necessary to protect the privacy interests of third parties referred to in SSS material that is not connected to the seizure of plaintiffs' documents. *See supra* at 56 (§ 6103 reflects Congressional concern that tax information should generally be confidential); Fed.R.Civ.P. 26(c); *cf. Tax Reform Research Group v. IRS*, 419 F.Supp. 415, 419–20 (D.D.C.1976) (no public interest served by release of material documenting use of IRS for political purposes but unrelated to asserted need of requesting party).

In light of the above discussion, it is hereby ORDERED that the motion of the IRS is granted to the extent that:

(a) all references in this court's November 5, 1979 order to paragraph (4) of the plaintiffs' subpoena to the IRS ("Schedule A–IRS") shall apply only to material (other than actual tax returns) in files pertaining to SNCC, SDS, and SCEF;

(b) an appropriate official of the IRS may assert in a detailed affidavit that the release of any document falling within the November 5, 1979 discovery order would "seriously impair" tax administration;

(c) none of the parties to this case shall publish or otherwise disclose documents or information produced by the IRS from SSS files relating to identified individuals or

10. Such an assertion should take the form of a detailed affidavit submitted by an appropriate IRS official. *See Chamberlain v. Kurtz*, 589

F.2d 827, 834 (5th Cir.), *cert. denied*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979).

58

organizations, unless it is shown that any such document or information was taken from the plaintiffs, or extracted from material taken from the plaintiffs, during the August 11, 1967 seizure of documents; and

(d) the IRS shall have ten days to comply with this order.