FUND FOR CONSTITUTIONAL
GOVERNMENT, Plaintiff,

v.

NATIONAL ARCHIVES AND RECORDS
SERVICE, Defendant.

Civ. A. No. 76–1820.

United States District Court,
District of Columbia.

Memorandum Aug. 31, 1978.

On Motion for Attorneys' Fees
July 5, 1979.

On Motion for Partial Reconsideration
April 25, 1979.

William A. Dobrovir, Andra N. Oakes, Washington, D.C., for plaintiff.

Daniel J. Metcalfe, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM

FLANNERY, District Judge.

This matter comes before the court on defendant's motion for summary judgment. This suit is brought pursuant to the Freedom of Information Act, 5 U.S.C. § 552, as

amended. Plaintiff originally sought access to records kept by the Watergate Special Prosecution Force (WSPF) relating to six distinct investigations: (1) the I.T.T. investigation; (2) the Milk Fund investigation; (3) the investigation of corporate campaign contributions [1]; (4) the inquiry into the "18½ minute gap" in the White House tapes; (5) the "Townhouse" campaign contributions investigation; and (6) the "Hughes-Rebozo" investigation. This FOIA request covers a voluminous number of documents, and when it became apparent that the processing of this request would take an understandably long time, plaintiff agreed to allow defendant to submit indexing and justification statements only for the closing memoranda, or their functional equivalents, which summarized the findings of the various investigations. At the time this agreement was reached, defendant had completed a *Vaughn* statement regarding the entire "Townhouse" file. Defendant subsequently submitted *Vaughn* statements regarding the closing memoranda for the I.T.T. and the Hughes-Rebozo files. As for the Milk Fund, Corporate Contributions, and Tape Gap files, the WSPF had prepared no closing memoranda, so defendant, with the approval of plaintiff, has submitted *Vaughn* statements for prosecution memoranda prepared for each file during the course of the investigations.

Although it appears that the *Vaughn* statements submitted by defendant are sufficiently detailed to allow this court to dispose of this motion, it also appears that this court may not in any case grant complete summary judgment for the defendant at this time. As indicated above, the parties have agreed to the processing of the closing memoranda or their functional equivalents. Despite the fact that these closing memoranda are quite lengthy and detailed, it does not appear that plaintiff has abandoned its claim for the underlying docu-

ments accumulated by the WSPF. Therefore, except for the "Townhouse" file, which has been the subject of a complete document-by-document review, the court will treat this motion as one for partial summary judgment which will not finally dispose of this case. Also, since the closing memoranda and the *Vaughn* statements submitted in affidavit form by defendant are fairly complex, the court will proceed by analyzing the extent of each exemption claim made by defendant, and then indicating which of the deletions were justified by those exemptions.

### I. *Exemption b(7)(C).*

■ Exemption 7(C) has been claimed as the basis for a large number of deletions in all six of the investigatory memoranda. Exemption 7(C) exempts from compulsory disclosure:

> investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . (C) constitute an unwarranted invasion of personal privacy.

Plaintiff admits that all of the memoranda and documents in question were investigatory records compiled for law enforcement purposes except for the closing memoranda for the I.T.T. and Hughes-Rebozo files. As to those two documents, plaintiff feels that since they were prepared after the investigations had been completed, they do not qualify under the b(7)(C) exemption. As primary support, plaintiff cites the decision in *Koch v. Department of Justice*, 376 F.Supp. 313, 316 (D.D.C. 1974) (Information maintained solely for public or Congressional relations, or concerned solely with organizational matter, is not exempt as investigatory material). However, in *Koch*, the court dealt with two sets of files main-

---

1. During the course of oral argument, plaintiff indicated that it had found at least one of the prosecution memoranda in the corporate campaign contributions file had already been released in full. Upon the court's direction, the attorney for the defendant investigated this matter and found that in other law suits, the

prosecution memoranda dealing with the 3M Company and Phillips Petroleum had been released in full. Defendant has advised the court that because of this, both of these memoranda have been released without deletions to plaintiff. These memoranda are, therefore, no longer subject to this suit.

tained by the F.B.I. The general organization or public relations information referred to above was contained in a biographical file the F.B.I. maintained on all Congressmen as a matter of course. The other file dealt with background investigations of persons nominated to high government posts. Regarding these last files, the court in *Koch* stated, "In order to insure such confidentiality, F.B.I. files may be withheld if law enforcement was a significant aspect of the investigation for which they were compiled . . . ." *Id.* at 315. The records involved in this case are akin to this second set of files in *Koch*, for though the final memoranda were prepared to report to Congress, they were also prepared as part of an on-going investigative and disciplinary effort delegated to the WSPF. As such, they would appear to be investigatory records compiled for law enforcement purposes within the meaning of exemption 7(C).

■ In light of this, the court must determine the extent to which disclosure of any of the withheld information would constitute an unwarranted invasion of privacy. When dealing with the FOIA exemptions relating to personal privacy, a court must balance the individual's interest in privacy against the public's right to know. *Department of Air Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592, 1608, 48 L.Ed.2d 11 (1976) (Exemption b(6)); *Rural Housing Alliance v. United States Department of Agriculture,* 162 U.S.App.D.C. 122, 126, 498 F.2d 73, 77 (D.C.Cir. 1974); *Tax Reform Research Group v. Internal Revenue Service,* 419 F.Supp. 415, 419 (D.D.C. 1976). In *Rose, supra,* the Supreme Court indicated that, while exemption (b)(6) applied only to "clearly unwarranted" invasions of privacy, Congress had explicitly dropped such a stringent requirement when enacting exemption (b)(7)(C), making the latter exemption applicable where invasion of privacy would simply be unwarranted. 96 S.Ct. at 1607 n. 16. The Fourth Circuit has determined that, as the government in this case argues, in light of *Rose,* greater weight should be given to a claim of personal privacy under exemption (b)(7)(C) than under exemption (b)(6). *Deering Milliken, Inc. v. Irving,* 548 F.2d 1131, 1136 n. 7 (4th Cir. 1977). Similarly, the court in *Congressional News Syndicate v. United States Department of Justice,* 438 F.Supp. 538 (D.D.C. 1977), stated:

> The difference in wording between the two exemptions was advised and not accidental; its effect is to make Exemption 7(C) a somewhat broader shield against disclosure than Exemption 6. . . .
> The difference in breadth, in turn, is attributable to the inherent distinctions between investigatory files and personnel, medical and similar files: that an individual's name appears in files of the latter kind, without more, will probably not engender comment and speculation, while, as the Government argues here, an individual whose name surfaces in connection with an investigation may, without more, become the subject of rumor and innuendo.

*Id.* at 541. Although the court in *Congressional News Syndicate* did not reach the conclusion that personal privacy interests must be accorded greater weight under exemption 7 than under exemption 6, that court's reasoning, together with the language of the Fourth Circuit and the Supreme Court, would seem to compel that result. Due to the nature of the exemption claim, it appears that the balance is not so tilted in favor of disclosure in cases involving exemption b(7)(C). *See Luzaich v. United States,* 435 F.Supp. 31, 36 (D.Minn. 1977) (bias in favor of disclosure diminished in cases involving exemption b(7)(C)).

■ Having determined that a claim of personal privacy is entitled to greater weight under exemption 7(C) than under exemption 6, the court must now assess the various factors present in this case and determine whether disclosure is warranted. In *Rural Housing Alliance v. U. S. Department of Agriculture, supra,* the court determined that Exemption 6, which is more stringent than exemption 7(C), was "phrased broadly to protect individuals from a wide range of embarrassing disclosures." Among the types of disclosure

which the court determined would warrant exemption were matters involving materials containing "information regarding marital status, legitimacy of children, identity of fathers of children, medical condition, welfare payments, alcoholic consumption, family fights, *reputation* and so on . . . ." *Id.* 162 U.S.App.D.C. at 126, 498 F.2d at 77. (Emphasis added.) Put another way, the exemption would apply to matters which under normal circumstances "would prove personally embarrassing to an individual of normal sensibilities . . . ." *Committee of Masonic Homes v. N. L. R. B.,* 414 F.Supp. 426, 431 (E.D.Pa. 1976). *But see Marathon LeTourneau Co., Marine Div. v. N. L. R. B.,* 414 F.Supp. 1074, 1084 (S.D. Miss.1976) (although exemption 7(C) applied to matters most commonly thought of as private, it did not apply to a situation where the government sought to withhold affidavits and statements of individuals scheduled to be witnesses at pending N.L. R.B. proceeding). It is clear in this case that much of the information withheld would cause severe personal embarrassment if released due to the still lingering repercussions of Watergate. Most of this information involves the identification of individuals who, though investigated, were charged with no crime. The prosecutor's authority to decide whether or not to charge an individual with a crime is an area traditionally left to the prosecutor's discretion, and is, therefore, only rarely subjected to judicial review. Thomas & Fitch, "Prosecutorial Decision Making," 13 *Am.Crim.L. Rev.* 507, 511–530 (1976). An individual does not lose his right to privacy simply because he has been investigated and subsequently not charged with any offense. Indeed, such an individual may require even greater protection, especially where, as here, the mere connection of an individual's name with a well-known investigation may be both embarrassing and damaging.

Another factor which this court must consider is the use to which the plaintiff wishes to put this information. *Tax Reform Research Group v. I. R. S., supra,* 419 F.Supp. at 419–20. *Accord, Luzaich v. United States, supra,* 435 F.Supp. at 36. In this regard, the opinion in *Tax Reform Research Group, supra,* is especially instructive. In that case, plaintiff, a public interest group monitoring the Internal Revenue Service, requested information regarding the political ties between the Service and the Nixon White House so as to ascertain the extent to which the White House had ordered audits of certain individuals. Congress had completed its investigation into this matter, and that investigation uncovered no wrongdoing on the part of the individuals in question. The court found that there was no reasonable expectation of the production of any further evidence of wrongdoing, and therefore that releasing this information would serve no useful purpose while exposing the investigated individuals to unwarranted notoriety. *Id.* at 420. In the present case, all three branches of the Federal Government have thoroughly assessed the Watergate scandal, and it does not appear that any further prosecutions are anticipated at this time. It is, therefore, difficult to see how plaintiffs would be fulfilling their stated intention of exposing governmental wrongdoing under these circumstances.

Finally, the court may consider whether any of the individuals whom the government seeks to protect gave information with the anticipation that their privacy would remain intact. In *Forrester v. Department of Labor,* 433 F.Supp. 987 (S.D.N. Y.1977), the court stated:

> [P]ublic policy requires that individuals may furnish investigative information to the government with complete candor and without the understandable tendency to hedge or withhold information out of fear that their names and the information they provide will later be open to public view.

*Id.* at 989. *Forrester* dealt with a situation in which individuals had furnished investigatory information to the government voluntarily. To the extent that the deletions in the present documents reflect such considerations, those exemptions will be upheld. Of course, a large number of deletions occurred because the information in-

volved was allegedly derived from grand jury testimony. As such, the government claims this information is exempt under exemption (b)(3), which is discussed *infra.*

In light of this analysis, the court is convinced that a majority of the deletions made pursuant to exemption b(7)(C) excise information which is properly exempt from disclosure. There are, however, exceptions, and these are all found in the Third, Fifth and Sixth Affidavits submitted by defendant.

■ The Fifth Affidavit deals with the "Townhouse" file, and that file was also the subject of the FOIA request analyzed in *Congressional News Syndicate v. United States Department of Justice, supra.* The court in that case determined that where campaign contributions were involved, the Federal Corrupt Practices Act, c. 368, title III, §§ 303–304, 43 Stat. 1071 (1925), *repealed* Pub.L. No. 92–225, title IV, § 405, 86 Stat. 20 (1972), expressed the public policy that all persons who make and receive such contributions must report them. 438 F.Supp. at 543. The court, therefore, concluded that there was no personal privacy interest involved in these contributions and receipts, and that, therefore, certain deleted information should be released. *Id.* The government has decided not to appeal that decision, and has, therefore, abandoned some of its exemption b(7)(C) claims for the "Townhouse" file. In light of this, the court will order the release of the information withheld in deletions 10a, 13a, 14a, 25a, 31, 33, and 33a of the Fifth Affidavit since these are the instances in which the government withheld information regarding persons who actually violated the Act.

Similarly, it does not appear that the *Congressional News Syndicate* must be restricted to its facts. The court in that case was not concerned solely with the factual situation before it, but with "the Act's status as an articulation of the overriding public interest in the integrity of the process by which political campaign contributions are made and received." 438 F.Supp. at 543 n. 3. The Corporate Contributions file, which is the subject of the Third Affidavit, in-

volves such campaign practices, and there is no reason why the holding in *Congressional News Syndicate* should not be expanded to include this additional Watergate file. Therefore, the court will order that the government release the information contained in those deletions made regarding persons whose activities constituted actual wrongdoing within the meaning of the Act. The following deletions as listed in the Third Affidavit should be released since they are not otherwise exempt:

H.M.S. Electric Corp. & Charles N. Huseman—2

American Airlines Co.—1, 3–11

Ratrie, Robbins & Schweitzer, Inc., Harry Ratrie & Augustus Robbins III—5–18

Braniff Airlines—1, 3

Diamond International Corp.—1–4, 6–11

Goodyear Tire & Rubber Co: Russell deYoung, Chairman of the Board—20

Carnation Co.—1, 10

LBC&W Inc., & William Lyles, Sr.—8–10, 11, 17

Northrop Corp. & Thomas V. Jones—23

American Shipbuilding Co./George M. Steinbrenner III/John H. Melcher, Jr.— 27a, 35, 72–74, 88–89, 91–92

Gulf Oil & Claude C. Wild—1

All of the other deletions made pursuant to exemption b(7)(C) in the Third Affidavit and its supplement have been validly made.

■ Finally, as to the Sixth Affidavit, six deletions, namely B3-B4, B73-B74, B90, and B101, appear to be improperly made. They all relate to evaluations of the job performances of various individuals employed by the government during the investigation. These do not qualify as investigative materials, and would seem therefore to be beyond the scope of Exemption 7(C). The government has not claimed exemption 6 as a basis for these deletions (personnel information the release of which would be a clearly unwarranted invasion of privacy), and therefore the information contained in these six deletions must be released.

■ With these exceptions, all other claims made pursuant to exemption b(7)(C) are proper. The following is a listing of

those claims, with a statement of the justification for the exemption:

A. The following deletions were properly made pursuant to Exemption 7(C) on the grounds that these segments contained allegations, suppositions, assessments, or speculations of wrongdoing on the part of individuals not prosecuted:

*1st Affidavit (I. T. T.):* A18 *, A40 *, B1-B4, B7, B9, B10 *, B12-B13, B16, B20-B22, B25-B29, B32-B33, B40, B43-B44, B46, B50-B52, B56-B58, B67, B71;

*2d Affidavit (Milk Fund):*

*Chestnut Memo:* 5;

*Nelson Memo:* 20;

*Mehren Prosecution Memo (7/19/74);* 4, 10;

*Russell Memo:* 26;

*Connally Memo:* 18;

*Associated Milk Producers Memo:* 3, 9, 11;

*3d Affidavit (Corporate Contributions):* Greyhound Corp.: 1-2, 4-6, 8-46;

Ashland Oil Co.: 1-22;

Prosecution of Ratrie, Robbins & Schweitzer, Inc., Harry Ratrie, and Augustus Robbins III: 1-4, 20;

Braniff Airlines: 4-22;

Time Oil: 1-54; 55 *, 56-57;

Diamond International Corp.: 5;

Goodyear Tire and Rubber Co.; Russell deYoung, Chairman of the Board: 1-19, 21;

Carnation Co.: 2-9;

LBC&W, Inc. and William Lyles, Sr.: 1-5, 6 *, 7, 12-15;

Northrop Corp. and Thomas V. Jones: 1, 8-9, 12-15 *, 16-17a;

Lehigh Valley: 1, 14 *, 15 *;

American Shipbuilding Co./George M. Steinbrenner III/John H. Melcher, Jr.: 1-13, 21, 32-33 *, 70-71, 77, 80, 82;

James R. Jones: 1-4, 6;

*5th Affidavit (Townhouse):* 1-5, 8, 10, 11-13, 15-25, 26-30, 32, 33b-36, 36a;

*6th Affidavit (Hughes-Rebozo):* B5-B7, B9-B13, B15-B22, B27-B28, B30-33, B36, B38-B53, B59-B60, B64-B70, B75-B76, B81, B87, B96-B100, B104-B109, B114-B116, B118-B124, B126-B133.

B. The following deletions were properly made pursuant to Exemption 7(C) on the ground that these segments contained evaluations of the demeanor or trustworthiness of certain individuals, the credibility of certain witnesses, and the accuracy of certain testimony:

*1st Affidavit:* A6-A10 *, A17 *, A29 *, A42 *, A64 *, A100 *, B5-B6, B8, B10 *, B14, B15, B18, B19, B30-B31, B39, B47, B49, B54, B60, B62, B66, B70, B73-B74, B76;

*2d Affidavit:* Mehren Prosecution Memo (7/19/74)—15, 38;

*3d Affidavit:*

Braniff Airlines: 2

Northrop Corp. and Thomas V. Jones: 12-15 *, 20 *, 22 *

Lehigh Valley: 2 *, 3-6, 8 *, 9 *, 12-13; American Shipbuilding Co./George M. Steinbrenner III/John H. Melcher, Jr.: 54, 76 *

*6th Affidavit:* B8, B61-B63, B78, B91-B95.

C. The following deletions were properly made pursuant to Exemption 7(C) on the grounds that these segments contain the identification and evaluation of evidence compiled against persons not prosecuted:

*1st Affidavit:* B11, B17, B34-B38, B41-B42, B45, B48, B53, B55, B59, B72, B75

D. The following deletions were properly made pursuant to Exemption 7(C) on the grounds that these segments contained information identifying confidential sources:

*1st Affidavit:* B61, B63-B65, B77;

E. The following deletions were properly made pursuant to Exemption 7(C) on the grounds that they revealed the medical or emotional condition of individuals:

*1st Affidavit:* B68, A102 *, A103 *, A105 *;

*2d Affidavit:* Supplemental Memos (7/30/74): 4;

*3d Affidavit:* LBC&W, Inc. and William Lyles, Sr.: 6 *;

---

* indicates that the deletion may be justified by more than one exemption, or more than one reason under a given exemption, and therefore appear in more than one list.

American Shipbuilding Co./George M. Steinbrenner III/John H. Melcher, Jr.: 56;

F. . The following deletions were properly made pursuant to Exemption 7(C) on the grounds that these segments contain information relating to the decision to prosecute or not to prosecute, and therefore reflects on the culpability of the individuals mentioned:

*2d Affidavit*:

*Chestnut Memo*; 8

*Nelson Memo*: 2, 22–23, 35, 37–42, 45–66, 68 *, 69–70, 72, 73 *, 74–78 *, 79–81;

*Parr Memo*: 2–5, 6–8, 13–14, 15;

*Mehren Prosecution Memo (7/19/74)*: 1, 7–10, 13, 14, 20, 26, 33, 42, 45–46, 51–52;

*Mehren Prosecution Memo (9/27/74)*: 1, 19–21;

*Hardin Prosecution Memo (9/17/74)*: 1, 3, 9–10;

*Hardin Prosecution Memo (9/20/74)*: 1;

*Russell Memo*: 29;

*Connally Memo*: 46;

*Supplemental Memos* (7/30/74): 3, 5;

*Associated Milk Producers Memo*: 1, 4a–5, 8, 10;

*3d Affidavit*:

HMS Electric Corp. and Charles N. Huseman: 1

American Airlines: 2

Braniff Airlines: 23–28

LBC&W, Inc. and William Lyles, Sr.: 18–20

American Shipbuilding Co./George M. Steinbrenner III/John H. Melcher, Jr.: 83–87, 90, 93

*4th Affidavit*: (18½ minute gap): 1–3;

*5th Affidavit*: 37

G. The following deletions were properly made pursuant to Exemption 7(C) on the grounds that these segments contain discussions of individuals who were not subjects of the investigation nor otherwise publicly associated with it:

*3d Affidavit*: Northrop Corp. and Thomas V. Jones: 10;

*5th Affidavit*: 5a–5c, 7;

*6th Affidavit*: B1–B2, B14, B23–B26, B29, B34–B35, B37, B77, B79, B82–B86, B88–B89, B102–B103a, B110–B113, B125, B80.

H. The following deletions were properly made pursuant to Exemption 7(C) on the grounds that these segments contain summaries of statements and interviews regarding the activities of persons under investigation but not prosecuted:

*6th Affidavit*: B54–B58.

I. The following deletions were properly made pursuant to Exemption 7(C) on the grounds that these segments contain accounts of negotiations with and other actions by defense attorneys which reflect on the culpability of their clients:

*3d Affidavit*: Northrop Corp. and Thomas V. Jones: 10

*6th Affidavit*: B71–B72.

II. *Exemption (b)(7)(D).*

This exemption is claimed only six times: deletion B61, B63, B64, B65 and B77 in Addendum to First Rhoads Affidavit; deletion B117 in Sixth Rhoads Affidavit. Plaintiff is satisfied that express assurances of confidentiality were given, and therefore does not contest these deletions.

III. *Exemption (b)(3).*

Exemption (b)(3) has been claimed in all but the 18½ Minute Gap file. This exemption states that the FOIA does not apply to material which is:

specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld . . ..

The government claims that as to the five remaining files, certain information involving grand jury testimony and witnesses is exempt from disclosure. Also, as to the Hughes-Rebozo file, the government contends that certain tax return and liability information is exempt. Since exemption 3 looks to other statutes for its operative

effect, and since the two types of exemptions claimed by the government under exemption 3 emanate from different statutes, the issues presented by grand jury testimony and tax information will be discussed separately.

A. *Grand Jury Information.*

The government indicates that the information deleted under this exemption 3 claim contains that names or other identification of grand jury witnesses; quotations from or summaries of grand jury testimony; evaluations of such testimony; discussions of the scope, focus and direction of grand jury investigations; identification of documents considered by the grand jury; and conclusions reached by the grand jury. The government contends that Federal Rule of Criminal Procedure 6(e), as amended in October, 1977 by Pub.L. 95–78, is the type of statute which triggers the provisions of exemption 3. Federal Rule of Criminal Procedure 6(e), as amended, states in pertinent part:

(e) Secrecy of Proceedings and Disclosure.—

(1) General Rule.—A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the Government, or any person to whom disclosure is made under paragraph (2)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of rule 6 may be punished as a contempt of court.

(2) Exceptions—

(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—

(i) an attorney for the government for use in performance of such attorney's duty; and

(ii) such government personnel as are deemed necessary by an attorney

for the government in the performance of such attorney's duty to enforce Federal criminal law.

\* \* \* \* \* \*

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding; or

(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.

The court must determine whether Rule 6(e) meets the standards of exemption b(3), and then whether the Rule acts to prevent disclosure of the information deleted.

■ In its recent opinion in *American Jewish Congress v. Kreps*, 187 U.S.App.D.C. 413, 574 F.2d 624 (D.C.Cir.1978), the Circuit Court had occasion to analyze the limits of exemption b(3). In that case, the court held that for a statute to qualify under exemption b(3)(B), the statute must indicate that the decision as to disclosure or non-disclosure has been made by Congress and not the agency. 187 U.S.App.D.C. at 417, 574 F.2d at 628. In other words, the language of the statute must indicate that, as to the question of disclosure "Congress had itself made the basic decision, and had left to the administrator only the task of implementation." *Id.* 187 U.S.App.D.C. at 419, 574 F.2d at 630. Rule 6(e) obviously fulfills these criteria. The rule allows for no exercise of discretion at the agency level. Rather, disclosure may be made only when ordered by a court either in connection with or preliminary to a judicial proceeding, or when requested by a defendant and the court finds sufficient grounds for a motion to dismiss the indictment because of the matters occurring before the grand jury. Fed.R. Crim.P. 6(e)(2)(C). As such, Congress, and not the agency, has dictated the terms of disclosure, and therefore Rule 6(e) does qualify under the terms of exemption b(3).

Plaintiff, in opposing the use of this exemption, has relied on a large number of cases construing the pre-amendment version of Rule 6(e) regarding the release of grand jury information in civil proceedings. Indeed, the Senate Judiciary Committee indicated in its report on the proposed amendments of Rule 6(e) that it was not its intention to narrow the use of grand jury information in civil enforcement proceedings. S.Rep. No. 95–354, 95th Cong., 1st Sess. 8 (July 20, 1977), U.S.Code Cong. & Admin. News 1977, p. 527. The present case is not, however, a civil enforcement proceeding. Nevertheless, the policy considerations enunciated in the context of a civil enforcement proceeding regarding the release of grand jury information have some applicability here. Specifically, the Senate Committee stated its approval, *id.* at 8, of the Supreme Court's opinion in *United States v. Proctor and Gamble*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), wherein the court stated that the secrecy surrounding grand jury proceedings "must not be broken except where there is a compelling necessity," which "must be shown with particularity." *Id.* at 682, 78 S.Ct. at 986. An excellent summary of the state of the law on grand jury secrecy was provided by the Seventh Circuit prior to the recent amendment to Rule 6(e) in *Illinois v. Sarbaugh*, 552 F.2d 768 (7th Cir. 1977). In that case, the state of Illinois had brought a civil antitrust action against several companies who had been indicted for criminal antitrust violations in different judicial districts within Illinois. The court therefore had the occasion to assess the situation where, as here, the grand jury had already completed its work. Finding that *Proctor & Gamble* had been modified somewhat by a series of often conflicting opinions, the court in *Sarbaugh* stated that once a grand jury has completed its term, "the party seeking disclosure [must] show a need commensurate with the degree of secrecy remaining and the policy reason that justifies protecting that secrecy." *Id.* at 774. The policy reason for maintaining secrecy is to protect witnesses from reprisals and to avoid creating a disincentive for citizens telling all

they know in supposedly secret proceedings. *Id.* at 774. *Accord, United States v. Salanitro*, 437 F.Supp. 240 (D.Nebraska 1977). As for the necessity to balance the remaining secrecy against the need for disclosure, the court in *Sarbaugh* indicated that if the information the government wishes to retain as secret has been disclosed even in a limited fashion, the burden of the showing of need for the information will be diluted to a similar degree. 552 F.2d at 775.

In the context of this case, plaintiff states that these various considerations weighing against disclosure are not present. Plaintiff chiefly relies on the opinion in *In re Report & Recommendation of June 5, 1972 Grand Jury*, 370 F.Supp. 1219 (D.D.C.) *aff'd*, 501 F.2d 714 (D.C.Cir. 1974) for the proposition that fairly free disclosure of grand jury records is allowed after the grand jury has finished its term. However, the court in that case expressly relied on the language of *Proctor & Gamble*, quoted above, to release the grand jury's special report to the House of Representatives' Judicial Committee. The grand jury had prepared the report and recommendation in that case specifically to aid the House in its consideration of articles of impeachment against Richard Nixon. Since the consideration was a "matter of the most critical moment to the Nation", *id.* at 1230, and since the indicted Watergate offenders who sought to prevent disclosure of the report due to adverse pretrial publicity could seek a remedy of that situation at trial, *id.* at 1230–31, the court allowed the release of the report to the House Committee. The court did, however, note that special precautions were being taken to assure that the report was not released outside of the Committee. *Id.* at 1230 n. 46. It would seem, therefore, that this case dealt with a peculiar circumstance. Although some of the same types of information present in the instant case may have been present in the grand jury report considered there, it is clear that none of the exigent circumstances present in that case are present here. Although there is a public right to know in some circumstances, it does not rise to the

level of the public need which occurred during the impeachment investigation.

■ In the present case, the secrecy surrounding the grand jury deliberations in question would also seem to be intact. Therefore, despite the passage of time, plaintiff still must bear a fairly heavy burden in showing the necessity of disclosure. It does not appear that the generalized public interest in this information rises to this level with regard to the First, Second and Sixth Affidavits. Indeed, the Southern District of New York in a recent case found that FOIA suits do not present sufficient reason to throw back the veil of grand jury secrecy. *Hiss v. Department of Justice*, 441 F.Supp. 69 (S.D.N.Y. 1977). In view of the policy considerations involved in maintaining grand jury secrecy, and the limited purposes to which plaintiff could put this information if it were to be released, this court will uphold the deletions made by the government on the basis of exemption 3 and Federal Rule of Criminal Procedure 6(e) in the First, Second and Sixth Affidavits.

■ The Third and Fifth Affidavits present somewhat different situations. As indicated earlier, the court in *Congressional News Syndicate, supra,* found a public policy in favor of the disclosure of campaign contributions and receipts. This public policy is, of course, counterbalanced in the present situation by the public policy assuring the secrecy of grand jury proceedings. Weighing these two concerns, it appears that the need for secrecy in grand jury proceedings must prevail. Without the guarantee of secrecy, there would indeed be a disincentive for individual truthful testimony before grand juries, especially in cases as controversial as the Watergate scandal. Therefore, the Third and Fifth Affidavits come within the ambit of this exemption claim.

■ As for the proper scope of the deletions made pursuant to exemption b(3) and Rule 6(e), Rule 6(e) is broad, applying to all matters occurring before a grand jury. As such, this rule acts as a basis for withholding such information as the identity of witnesses, *United States Industries, Inc. v. United States District Court for the Southern District of California, Central Division,* 345 F.2d 18, 21 (9th Cir. 1965), *cert. denied,* 382 U.S. 814, 86 S.Ct. 32, 15 L.Ed.2d 62 (1966), the identification of documents, *Corona Construction Co. v. Ampress Brick Co., Inc.,* 376 F.Supp. 598, 601-602 (N.D.Ill. 1974), descriptions, evaluations and summaries of testimony, *United States v. Hughes,* 429 F.2d 1293, 1294 (10th Cir. 1970), material revealing the scope and extent of the grand jury's investigations, *In re Grand Jury Investigation (General Motors Corporation),* 32 F.R.D. 175, 179-80 (S.D.N.Y. 1963), and the like. It appears therefore that all of the deletions made pursuant to exemption b(3) and Rule 6(e) contained information which was properly exempt from disclosure. These deletions are listed as follows:

*1st Affidavit:* A1–A124

*2d Affidavit:*

*Chestnut Memo:* 1–4, 6–7;

*Nelson Memo:* 1, 3–19, 21, 24–34, 36, 43–44, 67, 68 *, 71, 73 * 74–78 *;

*Parr Memo:* 2–5, 9–12;

*Mehren Prosecution Memo (7/19/1974):* 2–6, 11–12, 16–19, 21–25, 27–32, 34–37, 39–41, 43–44;

*Mehren Prosecution Memo (9/27/74):* 2, 3, 5–9, 11–18;

*Hardin Prosecution Memo (9/17/74):* 2, 4–8;

*Hardin Prosecution Memo (9/20/74):* 2–3;

*Russell Memo:* 1–25, 27–28, 30;

*Connally Memo:* 1–17, 19–45, 47;

*Supplemental Memos (7/30/74):* 1, 2, 6;

*Associated Milk Producers Memo:* 2, 4, 6, 7;

*3d Affidavit:*

Claude C. Wilde, Jr.: 1–45;

James R. Jones: 5;

Greyhound Corp.: 3, 7;

Ratrie, Robbins & Schweitzer, Inc., Harry Ratrie and Augustus Robbins, III: 19;

LBC&W, Inc. and William Lyles, Sr.: 16;

Northrop Corp. and Thomas V. Jones: 2–4, 6–7, 11, 18–19, 20 *, 21, 22;

Lehigh Valley: 2 *, 7 *, 8 *, 9 *, 10 *, 11; American Shipbuilding Co./George M. Steinbrenner III/John H. Melcher, Jr.: 14–20, 22–27, 28–31, 32–33 *, 34, 36–53, 55, 57, 58–69, 75, 78–79, 81, 94–95;
*5th Affidavit:* 6, 9, 14;
*6th Affidavit:* A1–A146

### B. I.R.S. Information.

■ In the Hughes-Rebozo file, the government claimed a total of 56 deletions on the basis of exemption b(3) and 26 U.S.C. § 6103, which exempts from disclosure tax returns and tax return information. Plaintiff does not dispute that section 6103 qualifies for application through exemption b(3). Plaintiff does not oppose 48 of these exemption claims, admitting that tax returns and personal tax information and the assessment thereof is exempted from disclosure by section 6103 via exemption b(3). Defendants have abandoned deletion C13 and released that information. Plaintiff originally objected to the remaining seven deletions on the grounds that the information contained therein was concerned more with the mechanics of IRS investigations than with the release of personal tax materials. However, defendant has revised these seven deletions, released additional information, and withheld only the names of individual taxpayers and details regarding individual tax liability. All of this information now falls within the definition of "return information" in section 6103(b)(2)(A), which states that return information includes:

a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person . . .

Therefore, all of the deletions made in the Sixth Affidavit on this basis appear to contain material exempt under exemption b(3) and 26 U.S.C. § 6103.

### IV. Exemption b(5).

■ The government has never claimed the b(5) exemption alone for any deletion. Rather, it has always been claimed in conjunction with another exemption, and the government has stated that to this extent, the b(5) claims are entirely duplicative of the claims under the exemptions which are oriented more towards the substance of the information withheld. Exemption 5 is designed to exempt from disclosure intra-agency memoranda on the grounds that the deliberative processes of governmental decisionmaking will operate efficiently only if shielded from unnecessary intrusion. *N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 1516–17, 44 L.Ed.2d 29 (1975). Such protection is necessary to insure the free flow of ideas and opinions. The exemption is tailor-made for the situation in which the Special Prosecutor's Office was assessing the evidence it was compiling. To expose this process to public scrutiny would unnecessarily inhibit the prosecutor in the exercise of his traditionally broad discretion to assess his case and decide whether or not to file charges. As such, where the b(5) exemption is invoked, it has been invoked properly and those deletions will be upheld on this additional basis.

■ Several deletions for which the b(5) exemption has been claimed merit special comment. In the American Airlines Co. prosecution memorandum in the Fifth (Corporate Contributions) file, deletions 12–17 have been justified on the basis of exemptions b(5) and b(7)(C). However, as to the 7(C) claims, the description of the information withheld indicates that the individuals involved actually committed legal wrongs. As such, under the *Congressional News Syndicate* ruling, *supra*, which is applicable here, these individuals who have violated the campaign contributions reporting laws

have no privacy interests. However, exemption b(5) has nothing to do with personal privacy. Its focus is on the effect of disclosure on agency deliberations. As indicated earlier, disclosure of information generated during a prosecutor's assessment of particular cases would be extremely detrimental to the prosecutor's free exercise of discretion. As such, even for these deletions, exemption 5 justifies the non-disclosure and therefore these deletions will be upheld.

### V. Conclusion.

Although the court in this memorandum disposes of a large number of exemption claims, the court may not, as indicated earlier, enter final judgment in this case at this time. However, the discussion of the various exemption claims contained in this memorandum should serve to narrow the focus of any future processing of the FOIA requests at issue here. An appropriate order accompanies this memorandum.

### ON MOTION FOR ATTORNEYS' FEES

█ This matter arises under Section 552(a)(4)(E) of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, which authorizes a court to award reasonable attorneys' fees and other litigation costs in any case where "the complainant has substantially prevailed." The plaintiff brought the above-captioned action in September, 1976, seeking access to the records of six major investigations conducted by the Watergate Special Prosecution Force which presently are maintained in the custody of defendant National Archives and Records Service. Throughout 1977 and 1978, while it continued processing the requested records, the defendant released to the plaintiff various documents from the six investigatory files. After the defendant completed its processing of the "closing memoranda" of the files in early 1978, the parties litigated the propriety of the defendant's determination that certain por-

tions of the processed documents should be withheld pursuant to applicable FOIA exemptions. In its memorandum decision and Order dated August 31, 1978, the court upheld such withholding in the majority of instances, but ordered the disclosure of certain itemized segments of information within three of the six investigatory files.[2] The plaintiff now moves for attorneys' fees and costs in the amount of $13,745.79, asserting that such an award "is appropriate in the circumstances of this case." Plaintiff's Memorandum, p. 1. The court agrees with the defendant that the plaintiff has failed to demonstrate that it has "substantially prevailed" in this litigation within the meaning of Section 552(a)(4)(E), and therefore will deny the motion for attorneys' fees.

The plaintiff does not invoke the court's ruling on the substantive merits of this lawsuit as the basis for its claim for fees and costs. Rather, it bases its claim that it has "substantially prevailed" upon the fact that "[t]he government agreed to release significant segments of the [requested] material only after litigation began." Id., p. 3. The plaintiff contends that the institution of this lawsuit "has thus caused the disclosure of hundreds of pages of documents from the WSPF files" and that "[w]ithout this lawsuit . . . plaintiff never would have received anything" beyond what was released during the administrative process. Id., pp. 3, 4.

Although the law in this and other Circuits is that Section 552(a)(4)(E) does not require a party ultimately to prevail at a final judgment on the merits of the FOIA withholding, see, e. g., Nationwide Building Maintenance, Inc. v. Sampson, 182 U.S.App. D.C. 83, 87–88, 559 F.2d 704, 708–09 (1977), the cases adduced by the plaintiff for that proposition do not establish an entitlement to fees in a case like the present one. The courts in those cases held only that a general bar to awards of fees before final judg-

---

2. Only the documents in the "Townhouse" investigatory file have been processed in their entirety thus far; for each of the other five files, the defendant has processed either the formal closing memorandum or its equivalent. At present, only approximately .2% of the almost one-half million document pages requested have been processed.

ment would frustrate the policy behind Section 552(a)(4)(E), because the defendant agency could avoid liability for fees by completely disclosing requested documents prior to an anticipated adverse judgment. *See id.* at 88–89, 559 F.2d at 709–10; *Cuneo v. Rumsfeld,* 180 U.S.App.D.C. 184, 188–89, 553 F.2d 1360, 1364–65 (1977). The plaintiff has cited no case in which a court has held that the fact that an agency released documents after the commencement of a civil action of itself made the plaintiff a prevailing party entitled to an award of attorneys' fees. In *Cuneo v. Rumsfeld, id.* at 189, 553 F.2d at 1365, the Court of Appeals for this Circuit declared that the plaintiff must demonstrate that its "action had a causative effect on the government's decision" to disclose the requested documents. *See also Vermont Low Income Advocacy Council, Inc. v. Usery,* 546 F.2d 509, 513 (2d Cir. 1976) (plaintiff "must show at minimum that the prosecution of the action could reasonably have been regarded as necessary and that the action had substantial causative effect on the delivery of the information").

Upon a review of the entire record in this case, the court is unable to agree with the plaintiff that it never would have received anything but non-informative papers without this lawsuit. The release of many of the documents eventually disclosed undoubtedly was delayed by the inability of a small Special Prosecutor's staff to complete expeditiously the necessary document processing. The court recognized the manpower constraints of that office in determining that the lawsuit should be stayed to allow time necessary for proper processing of the plaintiff's FOIA request. Memorandum and Order of January 10, 1977. The defendant surely overstates its case in suggesting that the plaintiff would have received *all* the materials it has now or will obtain in the future in the absence of this litigation. It does appear to the court, nevertheless, that disclosure of much of the released material followed as a matter of course after the transfer of the investigatory files to the formal custody of the National Archives and Records Service where they were subjected to experienced and thorough FOIA processing. Although it is difficult to estimate with precision how many documents the defendant released in response only to this lawsuit, the present case was not one "of absolute resistance to disclosure before the plaintiff sought judicial review," *Nationwide Building Maintenance, Inc. v. Sampson, supra,* 182 U.S.App.D.C. at 95, 559 F.2d at 716. In view of the unique circumstances of this case, the court cannot find that the lawsuit had the causative effect upon the release of the information sought necessary to justify an award of attorneys' fees.

Therefore, upon consideration of the plaintiff's motion for attorneys' fees and costs, and the opposition thereto, it is, by the court, this 5th day of July, 1979,

ORDERED that the plaintiff's motion for attorneys' fees and costs be, and the same hereby is, denied.

## ON MOTION FOR PARTIAL RECONSIDERATION

The defendant in the above-captioned action moves the court pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure for partial reconsideration and clarification of the court's memorandum decision and Order of August 31, 1978. This action arises from the plaintiff's request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, for access to the records of six major investigations conducted by the Watergate Special Prosecution Force which presently are maintained in the custody of defendant National Archives and Records Service. By its memorandum decision and Order, the court upheld the defendant's application of appropriate FOIA exemptions to the requested records in many instances, but ordered the disclosure of certain itemized segments of information within three of the six investigatory files. The defendant now seeks further review and relief with respect to three groups of informational segments: (1) a group of three segments of the "Hughes-Rebozo" file, in connection with which re-

consideration is sought under exemption (b)(6) and/or exemption (b)(7)(C); (2) a group of nine segments of the "Corporate Campaign Contributions" file, in connection with which reconsideration is sought under exemption (b)(7)(C); and (3) a group of 29 segments of the "Corporate Campaign Contributions" file, in connection with which reconsideration and clarification is sought as to whether such segments properly are exempt under (b)(7)(C). In support of its motion, the defendant has submitted to the court unexpurgated copies of all document pages subject to the motion for the court's *in camera* examination. For the reasons set forth below, the court will grant in part and deny in part the motion for partial reconsideration and clarification.

 With respect to the segments of the "Hughes-Rebozo" file, the defendant asks the court to reconsider its earlier decision that the excised material is exempt under (b)(7)(C), and, in addition, for the first time invokes (b)(6) as the basis for the deletions. Nothing in the court's *in camera* examination of segments B–73 and B–74 or in the recast affidavit supporting the claim of exemption alters the court's initial determination that the two segments do not constitute "investigative materials" and therefore are beyond the scope of (b)(7)(C). The court agrees with the defendant, however, that disclosure of the names of the persons who are severely criticized in the three segments would constitute a "clearly unwarranted" invasion of privacy within the meaning of (b)(6) and that, in view of the nature of the information contained in the segments, the threatened harm to the persons so criticized outweighs the public interest in disclosure. It appears to the court, nevertheless, that the privacy interests of the persons subjected to derogatory evaluations in the segments would be protected adequately by deletion of their names and occupational designations, and therefore that the segments should be released with these excisions only.

 In its earlier memorandum decision and Order, the court ordered disclosure of the nine "Corporate Campaign Contribu-tions" file segments on the authority of *Congressional News Syndicate v. Department of Justice*, 438 F.Supp. 538 (D.D.C. 1977), because the court believed from affidavit testimony that the segments pertained to culpability under the Federal Corrupt Practices Act ("FCPA"). As now described in Paragraph 13 of the Seventh Rhoads Affidavit and as verified by the court's *in camera* examination, each of the segments pertains to assessed wrongdoing under one or more of several different statutes. Although it is true, as the plaintiff points out, that the court in *Congressional News* was concerned with the FCPA's "status as an articulation of the overriding public interest in the integrity of the process by which political contributions are made and received," *id.* at 543 n. 3, the court cannot agree that segments totally unrelated to the FCPA fall within the *Congressional News* disclosure rule, even though they might relate to the integrity of the fundraising process. The court stated clearly in *Congressional News* that "the *statute* is pre-emptive" of the privacy rights of contributors and recipients of campaign funds, *id.* at 543 (emphasis added), and that information concerning "activities of participants in an illegal fundraising operation" that does not run afoul of the FCPA's reporting requirements must be disclosed under (b)(7)(C) only if disclosure would not "constitute an unwarranted invasion of personal privacy." *Id.* at 545. The court fully accedes to the plaintiff's contention that there is an indisputable public interest in an airing of campaign fundraising abuses uncovered by the Watergate Special Prosecution Force, but it does not agree that the public interest in disclosure of the nine segments at issue here overrides the privacy interests of the individuals named therein. As Judge Pratt noted in *Congressional News*, disclosure of investigative records in the absence of a criminal charge would subject the named individuals "to public embarrassment and ridicule" and would place them "in the position of having to defend [their] conduct without the benefit of a formal judicial proceeding." *Id.* Release of the nine segments therefore would

be an "unwarranted invasion" of the privacy of the identified individuals.

 In its memorandum decision of August 31, 1978, the court applied the *Congressional News* disclosure rule to reach the conclusion that "Corporate Campaign Contributions" file segments regarding "actual wrongdoing" under the FCPA are not exempt from disclosure under (b)(7)(C). The defendant has conducted a further administrative review of the pertinent documents and has "determined that although the activities and individuals described in these [29] segments certainly do bear some relation to possible culpability under the FCPA, [it] cannot conclude that such persons" engaged in activities constituting "actual wrongdoing" within the meaning of the FCPA. Seventh Rhoads Affidavit, ¶ 14. The fact that there is no "conclusive violation" of the FCPA, however, does not bar disclosure under *Congressional News.* Judge Pratt noted specifically that "[w]hether the Act's requirements actually would have applied is not the point" in view of the FCPA's status as an expression of the public interest in an honest fundraising system. 438 F.Supp. at 543 n. 3. It would appear, therefore, that "possible culpability" under the FCPA is sufficient to require disclosure.

Therefore, upon consideration of the defendant's motion for partial reconsideration and clarification, and the opposition thereto, it is, by the court, this 25th day of April, 1979,

ORDERED that, with the exception of the excisions authorized in the accompanying memorandum, the defendant's motion for reconsideration of the court's original decision concerning release of the three segments of the "Hughes-Rebozo" file be, and the same hereby is, denied; and it is further

ORDERED that the defendant's motion for reconsideration of the court's original decision concerning release of the nine "Corporate Campaign Contributions" file segments pertaining to culpability under statutes other than the Federal Corrupt Practices Act be, and the same hereby is, granted; and it is further

ORDERED that the defendant's motion for reconsideration of the court's original decision concerning release of the 29 "Corporate Campaign Contributions" file segments involving possible culpability under the Federal Corrupt Practices Act be, and the same hereby is, denied.